UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN WOFFORD,

    Petitioner,

v.

JEFFREY WOODS, *Warden*,

    Respondent.

Case No. 16-cv-13083
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING MOTION TO STAY PENDING APPEAL [21]
AND DENYING MOTION FOR BOND [14]**

---

    Petitioner Melvin Wofford is serving a mandatory life sentence with no possibility of parole. Yet the Court believes his jury conviction contravenes the Constitution. Over the course of several days, Wofford's jury informed the trial judge that they were hung. And their notes indicated that there was a single holdout. The situation in the jury room progressed to the point where jurors were harassing and verbally abusing the holdout. And given that the judge had admonished the jury that all notes had to come from the foreperson, the holdout felt compelled to ask an attorney (not involved in the case) to tell the judge about how the other jurors were treating her. The holdout's attorney did so. In the trial judge's view, by speaking with an attorney, the holdout had "flagrantly" violated his instructions not to speak with anyone about the case. So the trial judge removed the holdout and seated an alternate in her place. The new jury convicted Wofford in a bit more than 90 minutes. Because the removal of the holdout juror violated Wofford's rights under the Sixth Amendment, this Court conditionally granted Wofford a writ of habeas corpus. *Wofford v. Woods*, — F. Supp. 3d —, No. 16-CV-13083, 2018 WL 5786212, at *9 (E.D. Mich. Nov. 5,

2018). In particular, the Court ordered the State to retry Wofford in 90 days or release him. *Id.* at *10.

The 90 days have not lapsed but two motions are pending before the Court. Wofford asks to be released immediately. (ECF No. 14.) The Warden of Wofford's correctional facility asks this Court to stay its order requiring retrial or release. (ECF No. 21.) The Court will deny Wofford's request and grant the Warden's.

This is not to say that the Court agrees with all of the Warden's arguments.

For one, the Warden says that this Court erred in granting habeas relief because it found that Wofford's constitutional right to a unanimous jury was violated but that right has not been incorporated against the states. (ECF No. 21, PageID.2507.) Assuming that this Court wrongly identified the Sixth Amendment right at issue, the Warden's "no incorporation" argument misses the bigger point. The Court's holding rests on the test of *Symington*. *Wofford*, 2018 WL 5786212, at *8 ("Does the record evidence disclose[] [a] reasonable possibility that the impetus for [Juror M's] dismissal stem[med] from [her] views on the merits of the case?"). And that very same test is used to decide whether a criminal defendant's right "against improper interference with jury deliberations" has been violated. *See Williams v. Cavazos*, 646 F.3d 626, 646 & n.17 (9th Cir. 2011), *rev'd on other grounds sub nom. Johnson v. Williams*, 568 U.S. 289 (2013). And that right has been incorporated against the states:

> The Sixth Amendment protection required by *Brown* and foreshadowed by *Symington* is against improper interference with jury deliberations. Freedom to deliberate without coercion is a necessary component of "the interposition between the accused and his accuser of the common-sense judgment of a group of laymen," which is "the essential feature of a jury." *Williams*, 399 U.S. at 100, 90 S.Ct. 1893. This component of the Sixth Amendment is thus incorporated with respect to the states through the Due Process Clause of the Fourteenth Amendment. In *Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999), for example, we held that improper coercion had broken a jury deadlock to produce the ten-to-two vote needed to convict under Oregon law, and granted habeas as a result. Similarly, the deadlock-

2

>breaking dismissal of a holdout juror on an improper basis is an unconstitutional form of interference with deliberations.

*Id.* at 647 n.17. So while the Warden might be correct that this Court misstated the Sixth Amendment right at issue, the Warden's argument does not undermine this Court's essential reasoning.

Indeed, as Wofford points out (ECF No. 24, PageID.2664–2265), the issue he has raised could be raised in cases tried in states that permit less than a unanimous verdict. Oregon permits convictions on a guilty vote of 10 of 12 jurors. Suppose nine wanted to vote guilty but three were simply not persuaded by the prosecution's case. And suppose it was known who, among the twelve, were the three holdouts. In that scenario, the removal of any one of the three holdouts would result in the very improper interference with jury deliberations that occurred in Wofford's case.

Second, the Warden argues that this Court erred in finding that § 2254(d) did not apply to Wofford's Sixth Amendment claim. The Court again disagrees. The Court found that among the claims that Wofford presented to the Michigan Court of Appeals was a claim that his Sixth Amendment rights were violated when a holdout juror was removed. 2018 WL 5786212, at *6. And, as just noted, the constitutional question was whether "the record evidence disclose[d] [a] reasonable possibility that the impetus for [Juror M's] dismissal stem[med] from [her] views on the merits of the case[.]" *Symington*, 195 F.3d at 1087.

A review of the Michigan Court of Appeals' opinion does not reveal that this question was asked or answered. Nor does the opinion reveal that the state appellate court addressed Wofford's Sixth Amendment right against improper interference with jury deliberations. Indeed, the Michigan Court of Appeals at one point cast Wofford's claim as a "due process" violation. *People v. Wofford*, No. 318642, 2015 WL 1214463, at *1 (Mich. Ct. App. Mar. 17, 2015). And in the meat

of its analysis, it relied on the standard set out in *People v. Tate*, 624 N.W.2d 524 (Mich. Ct. App. 2001). But that standard involved balancing these two fundamental rights: a criminal defendant's right to retain the jury originally selected and his right "'to have a fair and impartial jury made up of persons able and willing to cooperate, a right that is protected by removing a juror unable or unwilling to cooperate.'" *Wofford*, 2015 WL 1214463, at *2 (quoting *Tate*, 624 N.W.2d at 529). Those are not the rights underlying Wofford's claim warranting habeas corpus relief. The Court did not find that Wofford had a constitutional right to have the jury as originally selected decide his fate—there are situations where alternates may, even must, be seated. As for the other right mentioned in *Tate*, the right to have an "impartial jury made up of persons able and willing to cooperate," that apparently involves a juror's ability to discharge her duties. Indeed, *Tate* cited *People v. Dry Land Marina, Inc.* for that rule statement; and *Dry Land* states that a defendant's "fundamental right to have a fair and impartial jury decide its case was protected by removing a juror who was *either too ill to serve or unwilling to cooperate*," 437 N.W.2d 391, 393 (Mich. Ct. App. 1989) (emphasis added). So, as this Court concluded prior, the Michigan Court of Appeals did not address "on the merits," 28 U.S.C. § 2254(d), Wofford's claim that his Sixth Amendment rights were violated when a holdout juror was removed.

Finally, the Court disagrees with the Warden's argument that this Court's opinion was internally inconsistent. The Warden argues, "It is contradictory to presume the state appellate court's finding that the trial judge removed the juror for flagrantly violating his instructions is correct, but then say there is a 'reasonable possibility' that the 'impetus' for the removal was the juror being the sole hold-out for conviction. This Court cannot have it both ways." (ECF No. 21, PageID.2506.) But the Court does not want it both ways. The Michigan Court of Appeals found that the *trial judge*'s reason for removing Juror M was because *he* believed she violated his

4

instructions not to talk about the case; but that factual determination does not necessarily preclude a finding that "the record evidence" disclosed a "reasonable possibility" that the "impetus" for Juror M's dismissal "stem[med]" from her views on the merits of the case. *Symington*, 195 F.3d at 1087. As explained, regardless of the trial judge's reason for removing Juror M, "the record evidence establishes a reasonable possibility that what led to the notes, what led to Juror M contacting an attorney, and what put the issue of Juror M's removal before the judge was Juror M's views about the merits of the case." *Wofford*, 2018 WL 5786212, at *8. In other words, accepting certain of the Michigan Court of Appeals' facts as true does not demand the conclusion that Wofford's Sixth Amendment rights were not violated.

All that said, the Court agrees with the Warden's bottom line.

In deciding whether to stay a writ of habeas corpus pending appeal, this Court is to consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). If "the second and fourth factors . . . militate against release," and if the Warden has "a substantial case on the merits," then "continued custody is permissible." *Id.* at 778.

That is just the case here. The Warden has a substantial case on the merits, including whether § 2254(d) governs the claim upon which the Court granted a writ. As for the second and fourth factors, the Warden has made non-frivolous arguments that, if released, Wofford might be a danger to the community or a risk of flight. Apart from his murder conviction, Wofford has three (albeit, non-violent) felony convictions and at least nine misdemeanor convictions. (ECF No. 21, PageID.2508; ECF No. 22, PageID.2573.) And since incarceration, Wofford has received many

misconducts for making "spud juice" (prison alcohol). (*Id.* at PageID.2509.) While the Court understands that Wofford has a substance-abuse issue, the repeat infractions suggest an inability to follow rules. And while the Court appreciates that Wofford did not leave the area in the 20 years between Gilmore's death and his conviction, the situation is different now given the sentence Wofford faces.

Accordingly, the Court GRANTS the Warden's motion for stay pending appeal. (ECF No. 21.) For similar reasons, the Court DENIES Wofford's motion for bond. (ECF No. 14.) This Court's order that the Warden "release Wofford from custody unless the State brings him to trial again within 90 days from entry of [the November 5, 2018 opinion and order]" is STAYED.

SO ORDERED.

                          s/Laurie J. Michelson
                          LAURIE J. MICHELSON
                          UNITED STATES DISTRICT JUDGE

Date: January 9, 2019

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 9, 2019.

                          s/William Barkholz
                          Case Manager to
                          Honorable Laurie J. Michelson